Thank you. May it please the Court, my name is Stephanie Finelli and I represent the appellants in this case, Clark and Carla Fratus. This case presents a shining example of when a private citizen is allowed to sue the government and its agents. This case has two facets to it. One is a raised judicata issue, and the other is whether the Fratus' presented sufficient evidence to defeat a summary judgment under that standard. Regarding the raised judicata, the district court found that raised judicata applied because they were the same claims, but they're not. In the first federal claim, the Fratus' sued almost immediately after receiving a decision in the state court that their properties were legal. And they sued for the actions by the county and its agents from 2007 through 2009 when the county was maintaining and asserting that the properties had violations and that they weren't legal living units. That was the basis for that first lawsuit. And what happened is the federal district court, as affirmed by this court, said, well, it's not egregious conduct because there was some potentially arguable basis for interpreting the ordinance the way that the county did. And what the county did was it misinterpreted an ordinance. So there's no egregious violation of civil rights. The Fratus' then filed a second lawsuit, this lawsuit. And what this lawsuit asserts is — Wait a minute. What did they want in the first lawsuit? What they wanted? Well, first of all, what they wanted in the first lawsuit is that they wanted damages for having gone through the whole having to — essentially, one of the things that they did want is they wanted the code violations extinguished. Their claim was that they were lawful. The claim was that the properties — well, the state court found the properties were lawful, Your Honor. Okay. What the lawsuit for — the first lawsuit sought damages and also a — what they sought was damages for the assertion that the properties were not lawful, okay, up through 2009. The argument was that they had — the county had — Well, let me explain. It's — the state court has decided the properties are lawful. Yeah. That's already been decided. And, in fact, if you look at the first district court of appeal opinion, it does say that those properties are lawful. What the Fratus' wanted, they wanted their attorney fees. They wanted all of the expenses that they had gone through from 2007 through 2009 when the county was asserting that the properties were not lawful. And so now what they're asking for is the permit in this lawsuit. Absolutely. Still, to this day, the county is asserting that these properties are not lawful. They won't grant a permit. They will not allow the county records to be changed to reflect that, in fact, instead of 972 square feet of living space, these properties have almost twice that because what the first district court of appeal has affirmed just recently, and I asked this court take judicial notice of it, was that the properties are, in fact, lawful. By the county continuing to assert that they're not, the distinction is this. From 2007 through 2009, arguably, the county was misinterpreting the ordinance. When Judge Brady made her decision in 2011 and said, oh, no, there's no evidence of violations, and when the first district just came out with its opinion and said, these properties are lawful, these are lawful living space. Why is that enough? I'm sorry? What else do you need? You've got a judgment saying the property is lawful. What else do we need? We have got county records showing that the property isn't lawful. You will hear the county attorney stand up and say, I'm assuming because it was in the answering brief, these properties are illegal. That's what the Freitas' want in this lawsuit. Well, and actually what the Freitas' want is a permit, right? You bet. They want the permit so that as things go forward into the future that there won't be any issues about anybody coming back and saying that these properties are not lawful, whether they want to sell the properties in the future, rent them out in the future, or anything else to do with these properties. Is that right? That is right. That is what they would like, and that's still what they don't have. And your federal claim is? Well, the Federal claims, there's a due process claim for the egregious behavior, but there's also a retaliation. You see, I don't see why you aren't simply this is what I've struggled with this. I don't know why you're not simply trying to enforce what the State court ruled under State law, that you're entitled to a permit. And here we are in Federal court and we've got all these fancy substantive due process and equal protection and all that. But isn't this really the same? Isn't this just a continuation of what you were fighting about in State court? It's not because now we have a ruling from the State court. If I understand Your Honor's question, it is why haven't the Freitas just gone into State court and tried to enforce this? Is that the court's question? Yeah. Why aren't you entitled to a permit under State law and they aren't living up to what the judgment was you got before? We are. We are entitled. But right now we're in Federal court. Because in addition to... Well, the question is why? Why is it any different than what you've already been litigating? It's different because they continue to retaliate and the county and its agents continue to retaliate against the Freitas. As recently as December of 2012, well after the first lawsuit was filed, and in fact, it was around the same time as the judgment came down in the district court, the Freitas went in to get a permit and they were denied. They were denied the permit. Why? Because the county said the properties are illegal. Now, maybe in 2009, arguably a valid argument, misinterpretation of the ordinance. But in 2012, a year and a half after Judge Brady said these properties are legal for the county, for its agents to say you don't get a permit, that is why we're in Federal court. Because that is the government gone wrong. That is the basis for a civil rights lawsuit by a private citizen. Could they go in? They could go in today to State court, presumably. But that's not enough because the point is when a government does what this government did, that's wrong. And that is the basis for a civil rights case. That is the basis. That was retaliation. That was a denial of equal protection. Anyone else could have gone in there and applied for a permit. The county would not even allow the Freitas to apply. They said, oh, the properties aren't legal. There's no point in applying. I'm sorry. So you want a permit and damages. Is that what it is? Yes. And they would like their attorney fees. Yes. Attorney fees for this lawsuit. Well, I think that their damages are the attorney fees for the prior lawsuit as well. You know, the Freitas have been battling this for a long time. Now, arguably, as I said, through 2009, perhaps. I still don't understand why you can't go to State court and get the permit. If you have a ruling from the Court of Appeal, you apply for a permit. It's denied. Isn't there an administrative indemnus to the Superior Court? This is California, right? This is California, yes, sir. Your Honor. As I recall, if a local official refuses a permit or anything, you go to the Superior Court for a written mandate, right? Well, they would. That's the normal procedure. They have state law claims, in fact, in the suit, which is for inverse condemnation and for declaratory and injunctive relief. Yes. Those are attendant state claims that they could bring in the state court. But in the state court. And the thing is, counsel, there are many instances where you, as a plaintiff, can choose to bring a case in state court as well as federal court, and that it's up to the plaintiff to decide where you want to file. Exactly. And this is one of those cases, Your Honor. This is one of those cases where, now, if the Freitas' let's say they filed suit tomorrow, what would they get? They would not get full relief. Because full relief in this case, this is the government having done something absolutely egregious. It was egregious, and it continues to be egregious, for the county of Contra Costa to say. I'm not sure how we can give a permit. I mean, that's a question of state law. You might be able to get damages here. How could you get a permit here? I don't know whether you're entitled to damages, but you might get damages. But we can't tell state authorities to issue a permit. I think what this court could do with the attendant state claims, which were dismissed because the federal claims were dismissed as well, is there's a claim for declaratory relief and injunctive relief. And I think this court could adjudicate those as part of the federal claims. That's what we're seeking. But the federal claims are distinct. The federal claims aren't seeking a permit. The federal claims are seeking damages. Because these people have been damaged. They have. For failure to issue the permit? Or for failure to live up to the judgment of the state court? The retaliation that they face for the attorney fees they had to go through, for the emotional distress. Retaliation for enforcing your rights under state law. The retaliation for, yes, exactly. The claim is the Freitas' were retaliated against by the county because they stood up for their rights. Now, but the record in terms of the retaliation claim, the record doesn't reflect that. And I'm trying to remember the man's name. Denison. Mr. Denison knew of the prior lawsuit, right? There's no evidence he didn't. And that's key. It's the burden of the moving party on summary judgment to show that there's no triable issue of fact. Certainly an inference could be drawn. This is a man whose job it is to take money for people's applications. And on this instance, he didn't even take. But under the standard under Celotec, the non-moving party just can't say, well, they didn't point to anything. I mean, under Celotec, you as a non-moving party have to show some evidence that there is an issue of triable fact, right? Well, that is the standard, Your Honor, yes. Mr. Denison is the DCD's application and permit center manager. This isn't a rank-and-file employee. To assert that he did not know who the Freitas' were in this small county, and he didn't assert that he did not know who they were. The fact is, everyone – I believe what it was is that he wasn't aware of the prior lawsuit, right? And so he'd need – in order to succeed on your retaliation claim, you need to show that somebody from the county who was responsible for providing the permit was aware of the prior lawsuit and acted in a way, based on that awareness, to deny them the permit. And I think one can infer that. I think a jury can infer that. I think that to get rid of that claim on summary judgment is premature and doesn't recognize the standard, which is all reasonable inferences must be drawn in the opposing party. I would like to reserve two minutes for rebuttal, unless this Court has pressing questions. Okay. Thank you.  Thank you. May it please the Court, Timothy Ryan appearing for defendants and appellees, County of Contra Costa, et al. Your Honors, this federal case is nothing more than a regurgitation of the previous federal case that the defendants prevailed on. The litigants are simply attempting to re-litigate, essentially, all of the claims that they – almost all of the claims that they asserted previously. Well, but, Counsel, there's a difference between the prior lawsuit and this one. So when the prior lawsuit was filed, it was the county's position that, under their interpretation of the ordinance, these units were unlawful, right? Yes. And with this lawsuit, plaintiffs are claiming that, in spite of notice to the county that these are lawful units, the county is refusing to issue them permits. Correct. But that was also the case in the earlier lawsuit. The plaintiffs have sought permits, which the county has, despite extensive investigation, determined that the zoning does not allow second units on their properties, and the plaintiffs have brought forward no evidence to support their claims. And so that was true. Except that, you know, the difference, what happened in between the two lawsuits is that a judge said, actually, no, these are lawful units. I would take issue with that, Your Honor. The writ of mandate action sought to have the administrative order imposing fines rescinded. And the judge, the state court judge, held in that matter, based on a motion and the limited administrative record before that court, that there was no basis for the county's administrative order, and the county went ahead and rescinded it. I submit that that's an entirely different proceeding than what occurred in Freitas 1, the earlier lawsuit, and what occurred here. In both these two federal court litigations, there has been extensive evidence provided by the county, principally in the form of the declaration of Aruna Bott, the principal planner, establishing all the reasons, and there are many, that the second unit permits are not allowed under the current zoning and previous zoning for the plaintiff's properties. The issue in the writ of mandate action was extremely narrow. And the plaintiffs did not seek permits. They did not seek an order allowing them permits in the writ of mandate action. That was not even addressed in that action. The sole issue was whether there was evidence to support the imposition, the administrative order imposing the fines. But did the county in that action, so in the administrative action, seek to show that the fines were legitimate because these units were unlawful? Your Honor, I believe, I was not the counsel for the county in that matter, but I believe, yes, an effort was made. But the record was very, very limited. These issues have now blossomed in Freitas I and now in Freitas II to where it's apparent what they're claiming, and the county has brought forth significant evidence, and I think the previous two courts, lower court's ruling on this would agree, that it supports what the county is saying, at least to the extent that no Federal claims can be made, with the exception of the retaliation claim. Okay. So when we get to Freitas I in Federal court, what is your view of what we should do with that? I'm sorry, Your Honor. In what sense are you asking? Well, you say that the state and mandamus action was very narrow. Yes. Yes. When we turn to the previous Federal litigation. In Freitas I, the plaintiffs were claiming there that the county wrongfully instituted and prosecuted this enforcement action and that they are in fact entitled to permits. So that question was presented in Freitas I just as it's presented here. And the county's position is, no, there was a reasonable basis for the county's decision to not allow these second units and not allow permits and to prosecute the enforcement action. The lower court in Freitas I agreed. The Ninth Circuit, affirming that judgment, agreed. Okay. So they weren't out of left field in taking the position that they took. But it has been held that these units are not unlawful. So why aren't they entitled to litigate their entitlement to the permits? I do believe that they would be entitled to pursue a writ of mandate action in the state court seeking the permits. That's not been done. They have not instituted any such action. The writ of mandate action that was previously litigated did not deal with the permits. It simply was an effort to rescind the administrative order. The court agreed under that limited evidence and record before her that the record did not support the county's order and the county rescinded it. So I would submit that if the plaintiffs are intent on obtaining permits, they have that option available to them still. And they have not done it in terms of proceeding by writ of mandate. And, counsel, though, if they were to proceed by writ of mandate, there isn't anything there that would operate and allow them to get attorney's fees, right? So they would only get the permit. I believe so. Okay. So if they wanted attorney's fees for this litigation, at least this litigation, so what they've been doing to try to get the permits, the only vehicle by which to do that is to bring a federal lawsuit under the statute that would allow them attorney's fees, is that correct? Well, they do have an inverse condemnation cause of action. And that is in state court. And they would be entitled, if they prevail, to recover their attorney's fees prosecuting that action. Okay. So why don't they just have a viable due process claim that they've been doing all this and you're not giving them any of what they're entitled to? And you're being arbitrary in every other way, and that's not the way the law is supposed to be. Well, I would point out that in Freitas 1, the court ruled that the county was not acting arbitrarily and capriciously, and that the county did have up until that time. Well, there's Okay, you know, that's over. But now we've got everything is in line, the stars are in line. We have the state court ruling. We've litigated that the position of the state was not out of line. But now we're entitled to get our permit, and you're still saying no. I don't believe that the state court writ of mandate order says what the plaintiffs say it says. It simply ordered that the county rescind the administrative order on that record. But, counsel, that seems to be a very limited reading of the order. So what I'm struggling with and what doesn't make sense to me is why the fines would be rescinded if it weren't that the units were lawful. Right? And I submit on that record, that's a very limited proceeding. There was no testimony taken. The order was made on motion. The judgment, which was issued four years later, compelled the county to rescind its administrative order. The county did so. It submitted a return saying just that. On what basis are they not entitled to a permit, then? Because the zoning does not allow it. Zoning. Correct. And the Declaration of Arunabhat set forth that under current zoning, second units are not allowed. Under the original zoning, dating back to 1951, so it also did not allow second units. Further, there was no permit ever found allowing a second unit on either of these two properties. And the plaintiffs claimed that they had. Why is your position now any more valid than it was when you said that the, when you put on the administrative fine? We did not have the declaration and testimony of, for example, Arunabhat setting forth what has been offered in Freitas 1 and in Freitas 2. None of that evidence was before the state court in the writ of mandate action. Again, this was a proper. But, counsel, did you have the opportunity to do that? Well. The administrative action. If the plaintiffs were interested in pursuing it further, which they did not, they immediately went and filed Freitas 1 in federal court. But had they been interested in pursuing it further, there would have been additional hearings before the county and the Board of Supervisors ultimately if there was an appeal where all of this evidence would have been presented and then it would have gone back to the state court. But you didn't answer my question. Yes. So my question was that before there was a determination during the administrative ruling about whether the fines should or should not be rescinded, did the county have the opportunity to present through declarations all of this information showing that the units were unlawful under the current zoning ordinance? I'm sure the county did have an opportunity, but I would also say the issues at that time were not so all-encompassing. They related to whether or not there were permits for the improvements that had been made to the downstairs units. So this is an evolving issue that took quite some time, a matter of almost 18 months, before the administrative hearing was even held before the Board of Supervisors. So to answer your question, yes, as a matter of abstract right, the county would have had the opportunity. In practicality, the issues were not formed to the extent they were when Freitas 1 was filed. Okay. But what I'm trying to get at, I guess, is that during the administrative hearing, the county was basically asked to provide justification for the fines. Correct. Okay. And the county's position was we fine the Freitas' because they had these units that were noncompliant. Correct. All right. And after a review, the Board of Supervisors came back and said, we find that the fines were not properly imposed. Is that right? Yes. The Board found the fines were properly imposed. Were not. Were not properly imposed. No. The Board. The Board, but then it went up. Correct. Then it went to the state court. Okay. It went to the state court, and the state court found that, in fact, the fines were not properly imposed. That there was no substantial evidence to support the order imposing the fines. Correct. Okay. Doesn't that, in and of itself, then say that these units, then, are lawful? It does not, Your Honor. Okay. Explain to me why not. Number one, in the writ of mandate action, there was no request made that permits be issued or that they had a right to permits. That was not before the court. What was before the court was, does the limited record before it, was that sufficient to allow the county to create this order imposing fines? The court said no. That does not mean that the evidence did not exist. You have to understand, this was only relating to the administrative order. This was not a full-blown trial or hearing or even complaint seeking the type of relief that the plaintiffs are seeking in this case or in Freitas 1. That is why we do not see the evidence, and that is why the court ruled the way it did. The opinion that was offered to support the granting of the motion went well beyond that, I grant you. But if you'll look at the writ, it's very limited, and it simply says the administrative order must be rescinded. The judgment does the same. The county went ahead and filed its return saying we have done just that. That was the beginning and the end of the writ of mandate action, and that's why I do not believe it has the importance that the court may suspect it has in this particular matter. Thank you. Thank you. Thank you, Your Honor. Thank you. Thank you. When I was last here, I was asked, why can't the Freitas' just go into state court and get their permits? Well, I think we see why, because the county continues to maintain that the properties are illegal. Well, that's why you go to court, you know. But that's the government. If they agree with you, you wouldn't need to go to court. But that's the government action that is so egregious. What's egregious? I mean, you have a dispute. Counties often don't do what people want, and you go to state court and get a permit. Let me ask you a different question. Assuming that, in fact, this case is, in fact, these issues are different from the first case, why weren't these issues that you were required to raise in the first case? Is the question why wasn't it raised in the first case? Why weren't you required to raise them in the first case? Because at the time of the first case, we didn't have — Well, now, when you're talking about first case, what are we talking about? Well, okay. The first case, the first Federal case. The first Federal case, thank you. That was what I understood as well. The first Federal case was based on the actions the county took prior to the writ of mandate. That's why. Because it was based on the county's actions in asserting before they got a ruling, before my clients got a ruling from Judge Brady that the properties are, in fact, legal, that that whole time the county was maintaining the properties were illegal was wrong. Well, was the action filed after the administrative determination in the state court? It was filed within weeks, yes, within weeks after. However, at that time, we've alleged actions that took place afterward. In fact, it looks like we'll have more actions because what's going to happen is my clients and I don't understand how one could argue that there's a misinterpretation of a court order, of a court judgment, which is these properties are legal, which is now law of the case as a result of the First District Court of Appeal. And, counsel, the notices that the freighters received stated that the unlawful conditions have been abated and no longer exist at the property. Is that right? Exactly. And I thank you. I had written that down to bring up. The counties filed or recorded notices of abatement. The freighters did nothing to their property. This is an admission that the properties are legal. They can't talk out of both sides of their mouths. And that's the problem. That's why we're here, because a government can't do what this government did. It's not allowed under the law. And my clients are entitled to their fees for having to suffer through years and years of all of this because the county continues to assert that their properties, which a state court has said twice now are legal, can't get permits. And the last thing that I'll ask you before you sit is, in terms of timing, that it was after Freighters 1 had been filed that Mrs. Freighters actually went to go seek the permit. It was a good year and a half later, December 2012, and the first federal suit was filed in July or end of June of 2011. Okay. Can I ask one more question? Was the county's position based, it was my understanding that the county's position was based, at least in part of these protracted proceedings, on the size of these second units. And now the county is talking about zoning. Is that a different argument or what is going on? The question is whether the properties are legal. That is the question. And they were the first district has said the properties are, in fact, legal, that they were permitted for legal occupancy. So whether the zoning now says you can't have them is irrelevant. Okay. Thank you. Thank you. The case is signed and will stand submitted. Our last case on the calendar is Fitzpatrick versus Tyson Foods.
judges: Schroeder, Kozinski, Ellis